# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CALVIN F. CURRICA, #354-168, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. 8:16-cv-03259-PX |
| WARDEN RICHARD MILLER, *et al.*, | * | |
| Respondents. | * | |

## MEMORANDUM OPINION

Pending before the Court is Calvin F. Currica's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. ECF No. 1. Currica, proceeding pro se, challenges the validity of his conviction and the sentence imposed after pleading guilty to second degree murder and carjacking in the Circuit Court for Montgomery County, Maryland. As directed by this Court, Respondents have supplemented their Answer and filed exhibits not initially submitted. ECF No. 15. Currica has also replied. ECF No. 18. The Court finds a hearing unnecessary. *See* Loc. R. 105.6; *see also* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the following reasons, the Court dismisses Currica's petition and declines to issue a certificate of appealability.

### I. Background

On March 14, 2008, Currica was indicted in the Circuit Court for Montgomery County in Case No. 109922 for murder and robbery with a dangerous weapon. On March 20, 2008, Currica was separately indicted in Case No. 109946 for multiple counts of carjacking, kidnapping, robbery, and first degree assault, as well as conspiracy to commit and attempt to commit those crimes. ECF No. 12-1 at 2. On August 11, 2008, Currica, who was then

represented by counsel, entered a guilty plea in both cases pursuant to a written plea agreement. *Id.* at 11; ECF No. 15-1 at 2. Currica pleaded guilty to one count of second degree murder in Case No. 109922, amended down from a first degree murder charge, and two counts of carjacking in Case No. 109946. ECF No. 12-1 at 11; ECF No. 15-1 at 2. Counsel for Currica and the State sent a joint plea memorandum to the Circuit Court for Montgomery County, which included a line stating: "Guidelines: Thirty to Fifty-One Years." ECF No. 15-2 at 1.

At the plea hearing, the court acknowledged that the pertinent guidelines, as noted in the memorandum, were "30 to 51 years." ECF No. 12-2 at 3 (Plea Hearing Transcript). The court expressly advised Currica, however, that "[w]hen you are charged with second degree murder, which is what the charge will be changed to, you are liable for a maximum penalty of 30 years in jail or less depending on what I determine, and you can be placed on probation for any suspended sentence I might impose." *Id.* at 10. As to the carjacking charges, the court similarly explained to Currica that "each of these charges carries the possibility of being put in jail for up to 30 years. Once again, I can impose whatever sentence, including jail time and a period of suspended jail time, if I wish to do so." *Id.* at 11. Currica confirmed that he understood the court's advisement. *Id.* at 10–11. Currica also confirmed that was entering his guilty plea "freely and voluntarily." *Id.* at 12.

On November 18, 2008, Currica appeared for sentencing. *See* ECF No. 12-3 (Sentencing Hearing Transcript). Currica's attorney urged the court to impose a sentence within the guidelines, which "were calculated together with the State." *Id.* at 12. The Assistant State's Attorney, however, recommended a sentence above the guidelines. ECF No. 12-3 at 38–40. Ultimately, the court sentenced Currica to 30 years' confinement for the second degree murder count, followed by 30 years for one carjacking offense (Count 1), and 25 years for second

2

carjacking (Count 9), all to run consecutively for a total of 85 years' imprisonment.[1]  *Id.* at 56.  As grounds, the court noted Currica's use of gratuitous violence and that he committed the crimes in quick succession over a short period of time.  *Id.* at 55–56.

After sentencing, Currica mounted a series of challenges to his prison term.  On November 21, 2008, Currica filed an Application for Sentence Review by a three-judge panel, which was denied on September 2, 2009, and a Motion for Reconsideration of Sentence which was denied on May 7, 2013.  ECF No. 12-1 at 13–15.  On June 19, 2012, Currica filed a Motion to Correct an Illegal Sentence, which was denied on July 16, 2012.  ECF No. 12-1 at 14.

On June 2, 2014, Currica filed a pro se Petition for Post-Conviction Relief, which he amended on September 22, 2014, to assert the following claims:

(1) the State and Circuit Court breached the plea agreement by recommending, and imposing, a sentence higher than the 51 years noted in the guidelines range; and

(2) trial counsel provided ineffective assistance by failing to file an Application for Leave to Appeal his Convictions.

ECF No. 12-4 at 1–3; ECF No. 12-5.  After a hearing on the petition, the Circuit Court granted in part and denied in part Currica's claims.  ECF No. 12-7 at 43–45.  The court rejected Currica's contention that a breach of the agreement occurred, but granted his ineffective assistance of counsel claim on the grounds that his defense counsel failed to appeal his original conviction and sentence, as Currica had demanded.  *Id.*  As relief, Currica was given thirty days to file a belated Application for Leave to Appeal.  *Id.* at 45.

Consistent with the Circuit Court's order, Currica filed an Application for Leave to

---

[1] The Court corrects an earlier error in stating that Currica was sentenced to 80 years.  ECF No. 13 at 2.

Appeal, which the Maryland Court of Special Appeals summarily denied on August 12, 2015. ECF No. 15-4 at 2. Currica also filed an Application for Leave to Appeal the Denial of Post-Conviction Relief as to his breach of plea agreement claim, which the Court of Special Appeals also summarily denied on August 12, 2015. ECF No. 15-3 at 2. Currica's final effort to obtain relief in state court, a petition for writ of certiorari, was also summarily denied by the Court of Appeals of Maryland on October 28, 2015. ECF No. 12-1 at 19.

On September 26, 2016, Currica filed his habeas petition before this Court, challenging the validity of his guilty plea and imposition of the prison term which, in his view, exceeded the terms of his plea agreement. ECF No. 1 at 8–14. Respondents urge this Court to deny the Petition, arguing the state court properly determined that the plea agreement was not breached and that Currica's plea was otherwise constitutionally sound. ECF Nos. 15, 17.

**II.     Standard of Review**

This Court may grant a petition for a writ of habeas corpus only to address violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). In this regard,

> a federal court reviewing a habeas petition that has already been adjudicated on the merits in state court [must] give considerable deference to the state court decision. A federal court may not grant habeas relief unless the state court arrived at a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d)). In reviewing the Petition, the Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Id.*

For a state court's decision to be contrary to established federal law, the state court must

4

have arrived at a conclusion contrary to the United States Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). As to an unreasonable determination, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, a state prisoner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall,* 572 U.S. 415, 419–20 (2014)).

At base, for a § 2254 claim to be cognizable, the petitioner must assert a violation of federal statutory law or of the United States Constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal marks and citations omitted).

When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then "a federal habeas court is to 'look through' the unexplained

5

affirmance to examine the 'last reasoned decision' on the claim, assuming that the summary appellate decision rests on the same ground." *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 526 (4th Cir. 2016) (citation omitted); *see also Nicolas*, 820 F.3d at 129 ("We 'look through' the Court of Appeals of Maryland's summary denial of Nicolas's petition for certiorari and evaluate the last reasoned state court decisions rejecting the" claim.)  Accordingly, as the Maryland appellate courts summarily denied Currica's appeals in this case, the Court looks to the reasoned decision of the Circuit Court.

### III. Discussion

#### a. Plea Agreement Claims

Currica raises three grounds for relief concerning his plea agreement.  ECF No. 1 at 8–14.  Although Respondents contend the three claims "can essentially be distilled" into the single question of "whether the circuit court breached the plea agreement" (ECF No. 12 at 18), the Court considers each claim in turn.

First, Currica asserts that both the sentencing court and the State breached the plea agreement which, in his view, included a binding sentencing range of 30 to 51 years' imprisonment.  Currica contends the breach occurred when the State sought, and the judge imposed, a sentence over 51 years.  In support of this claim, Currica points to the joint plea memorandum that Currica's counsel and the State's attorney sent to the court in anticipation of the plea hearing, which read in total:

**Comments:**

1. In Criminal Number 109922, the Defendant will enter a plea of guilty to an amended count of Murder in the Second Degree.

2. In Criminal Number 109946, the Defendant will enter a plea of guilty to the following:

6

> a. Count One – Carjacking; and
> b. Count Nine – Carjacking.
>
> **<u>Guidelines:</u>** Thirty to Fifty-One Years.

ECF No. 15-2 at 1.

Respondents argue that nothing in this memorandum or in the written plea agreement stated that Currica's plea bound the court to impose a guideline sentence. ECF No. 15 at 5. Additionally, Respondents underscore that the written plea agreement, which Currica signed, is silent as to the sentencing guidelines and rather states:

> The Defendant will enter a plea of guilty to Murder in the Second Degree. (The Defendant will also enter a plea of guilty to two counts of Carjacking in Criminal Number 109946.) The Court will order a Pre-Sentence Investigation. The parties are free to allocute at the time of sentencing.

ECF No. 15-1 at 2. Thus, Respondents contend, the only fair reading of the plea agreement is that the parties had reached *no* agreement as to sentencing.

On post-conviction review, the Circuit Court agreed with Respondents and rejected Currica's contentions that any violation of the plea agreement occurred. ECF No. 12-7 at 43. The Circuit Court further construed the memorandum to the sentencing court as conveying no more than estimated guidelines. *Id.* at 39–40. Thus, the Circuit Court concluded that it would be "clear to any reasonably objective person, that these are ranges only, the court at no time bound itself in any way shape or form." *Id*. at 42.

Consistent with the plain language of the agreement, the memorandum and the sentencing court's colloquy with Currica, the Circuit Court also noted the "immense benefit" that Currica had received by pleading guilty to an amended second degree murder charge rather than first degree murder which carries a maximum term of life imprisonment. *Id.* at 44. Finally, the Circuit Court determined that the plea colloquy would lead any reasonable person in Currica's

7

position to understand that the sentencing court was not bound by any particular range. *Id.* In short, the Circuit Court found that at sentencing, Currica was told the guidelines were "advisory only" and the sentencing court could exceed those guidelines, as it ultimately did. *Id.* at 42.

In urging this Court to part company with the Circuit Court, Currica contends that the determination was contrary to clearly established federal law set forth in *Santobello v. New York*, 404 U.S. 257 (1971). *Santobello* stands for the bedrock principle that that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. Currica contends the reviewing court erred because his guilty plea was induced by the promise of a sentence no greater than 51 years.

To the contrary, however, and as the Circuit Court determined, nothing in the signed plea agreement prohibited the State's attorney from recommending a sentence exceeding the guidelines. Further, nothing in the plea colloquy or memorandum sent to the sentencing court suggests otherwise. Accordingly, Currica's claim of a promised fifty-one years simply does not exist.

Likewise, the Circuit Court's determination does not contravene *Santobello*. While "each party should receive the benefit of its bargain" pursuant to a plea agreement, the law does not require enforcement of promises that the State "did not actually make in the plea agreement, for neither party is obligated to provide more than is specified in the agreement itself." *United States v. Obey*, 790 F.3d 545, 547 (4th Cir. 2015) (internal citations and quotation marks omitted). The post-conviction court found that Currica did in fact receive the benefit of his bargain—avoiding a life sentence without the possibility of parole—and found no evidence that a binding agreement had been reached with respect to his sentence. Accordingly, the reviewing

8

judge's denial of post-conviction relief constitutes a reasonable application of the law. Currica is not entitled to relief on this claim.

Currica next contends that the sentencing court's failure to expressly advise him it was not bound by the sentencing guidelines rendered his plea "not knowing and voluntary." ECF No. 1 at 12. The Supreme Court has long maintained that the validity of a guilty plea turns on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969). However, the state court's determination was consistent with, rather than contrary to, this principle.

At the plea hearing, the judge specifically informed Currica that the murder charge made Currica "liable" for "a maximum penalty of 30 years in jail or less depending on what I determine." ECF No. 12-2 at 10. As to the other two charges, the sentencing court expressly told Currica that each "carries the possibility of being put in jail for up to 30 years." *Id.* at 11. Finally, the court told Currica, quite plainly that he "can impose whatever sentence" and never spoke of any limitation other than the statutory maximums. *Id.* Ultimately, on this record, the Circuit Court's conclusion that Currica had been properly advised as to the maximum potential penalties pursuant to his plea agreement is neither incorrect or unreasonable.

In this respect, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (""). Accordingly, the post-conviction court's denial of relief on this ground was reasonable. Currica's claim that his plea deal was not knowing and voluntary necessarily fails.

Finally, Currica maintains the sentencing court erred by not allowing him an opportunity

9

to withdraw his plea "once the court rejected the agreement." ECF No. 1 at 13–14. The fundamental flaw in this claim is that the sentencing court never rejected the plea agreement. Thus, Currica's assertion that he was somehow denied an opportunity to withdraw falls flat, particularly where he never actually moved for such a withdrawal. *Cf. Miller v. State*, 272 Md. 249, 255 (1974) ("[W]here a guilty plea has been induced by the prosecutor's agreement to make no recommendation as to sentencing, and the prosecutor violates that agreement, the defendant may at his option have the guilty plea vacated.") (citing *Santobello*, 404 U.S. at 263). Accordingly, Currica is not entitled to relief on this ground.

### b. Writ of Certiorari Claim

As his fourth ground for relief, Currica attempts to argue that the Court of Appeals erred in denying his petition for certiorari. ECF No. 1 at 15. This claim, however, is not premised on an application of federal law and is thus not cognizable under § 2254. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."). The Court must deny this claim as well.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).

Currica has not made the requisite showing. Therefore, the Court declines to issue a certificate of appealability. Currica may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## V.     Conclusion

For the foregoing reasons, Currica's Petition is denied. A separate Order follows.

9/13/2019                                                                                    /S/
Date                                                                              Paula Xinis
                                                                                  United States District Judge